**Kyle MEDLIN, Appellant**

v.

**PROGRESSIVE DIRECT INSURANCE COMPANY, Appellee.**

**No. 2011–CA–002258–MR.**

Court of Appeals of Kentucky.

April 5, 2013.

Discretionary Review Denied by Supreme Court Feb. 12, 2014.

Sam Aguiar, Nicholas Chandler, Drew Haile, Louisville, KY, for appellant.

Robert L. Steinmetz, Louisville, KY, for appellee.

Before KELLER,[1] STUMBO and THOMPSON, Judges.

## OPINION

STUMBO, Judge:

Kyle Medlin appeals from an order of the Jefferson Circuit Court denying his motion for declaratory relief and entering judgment in favor of Progressive Insurance Company. We find no error and affirm.

On December 28, 2010, Medlin was involved in a single-vehicle automobile accident. At the time of the accident, Medlin had an automobile insurance policy with Progressive which obligated Progressive to pay personal injury protection, also known as basic reparation benefits (PIP benefits). On January 14, 2011, Medlin filled out an application in order to receive his benefits. Included in the application was a section allowing Medlin to indicate how he wanted Progressive to distribute his PIP benefits. In that section he wrote "RESERVE BENEFITS" and also checked a box marked "PLEASE PAY ME DIRECTLY (draft will include your name *and* the name of the medical provider)".[2]

Sometime in January of 2011, Medlin began seeing a chiropractor for injuries related to the accident. Instead of paying the bills as they were presented to Progressive, Medlin continued to have Progressive reserve his benefits and not pay any bills until he directed. Ultimately,

---

1. Judge Michelle M. Keller concurred in this opinion prior to her appointment to the Kentucky Supreme Court. Release of this opinion was delayed by administrative handling.

2. Another box Medlin could have checked was marked "PLEASE PAY MEDICAL PROVIDER DIRECTLY".

Progressive was presented with a total of $8,164.98 in medical bills. On March 1, 2011, an agent for Progressive contacted Medlin to inquire as to how the bills were to be paid. Medlin stated that he wanted payment made directly to him. The agent informed Medlin that only a joint check could be made out which included both Medlin's name and the name of the medical provider. Medlin stated he would "think about it" and contact the agent at a later date.

On March 3, 2011, Medlin sent Progressive a letter[3] indicating that he wanted the PIP benefits paid directly to him. On March 11, 2011, an agent for Progressive sent a letter to Medlin acknowledging receipt of the letter. Progressive's letter also indicated that Progressive could only pay Medlin directly if it was to reimburse him for expenses he had paid out of pocket. Medlin then filed the underlying petition for declaratory relief on April 4, 2011, arguing that Progressive should pay his PIP benefits to him directly.

On August 1, 2011, oral arguments were held. As of that date, the medical bills had not been paid. On November 10, 2011, the trial court entered an order denying Medlin's petition. The trial court concluded that the Motor Vehicle Reparations Act (MVRA) only requires insurance obligors to either pay medical expenses directly to the medical providers or to reimburse the insured for actual accrued economic losses; therefore, because Medlin had not paid any of the medical bills himself, he had not incurred any economic losses. The trial court labeled Medlin's requested relief as "preimbursement", which is not contemplated by the MVRA. The trial court's order was later clarified

and made final and appealable on December 8, 2011. This appeal followed.

Medlin argues that he is entitled to receive his PIP benefits directly in order for him to personally pay his medical providers. He cites to Kentucky Revised Statute (KRS) 304.39–210(1) and KRS 304.39–241 in support of his argument. KRS 304.39–210(1) states:

Basic and added reparation benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as work loss, replacement services loss, or medical expense is incurred. Benefits are overdue if not paid within thirty (30) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding thirty-one (31) days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, and pays them within fifteen (15) days after the period of accumulation. Notwithstanding any provision of this chapter to the contrary, benefits are not overdue if a reparation obligor has not made payment to a provider of services due to the request of a secured person when the secured person is directing the payment of benefits among the different elements of loss. If reasonable proof is supplied as to only part of a claim, and the part totals one hundred dollars ($100) or more, the part is overdue if not paid within the time provided by this section. *Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates.* (Emphasis added.)

---

**3.** The letter was titled "Affidavit" and made to look like an affidavit, but it was unsworn; therefore, we will identify it as a letter.

KRS 304.39–241 states in relevant part that "[a]n insured may direct the payment of benefits among the different elements of loss, if the direction is provided in writing to the reparation obligor. A reparation obligor shall honor the written direction of benefits provided by an insured on a prospective basis."

Medlin argues that nothing in the MVRA limits how the PIP benefits are to be distributed. Medlin argues that he, as the insured, can direct the payment of benefits among the elements of loss in any way he sees fit. Medlin only sought payment for one element of loss in this case, medical expenses. He requested Progressive to send him a check, in his name only, for the amount of medical expenses so he could directly pay his medical providers. He also requested Progressive *not* to pay his medical provider directly, as is allowed by KRS 304.39–210(1).

Progressive argues that the MVRA does not require it to pay PIP benefits directly to the insured. Progressive claims the only requirements set forth in the MVRA are for it either to reimburse the insured for money spent out of pocket or to pay the medical providers directly. We agree with Progressive's interpretation of the MVRA.

KRS 304.39–241 allows for an insured to direct an insurance company how to pay the benefits, but the insurance company is obligated to follow the payment options described in the MVRA. KRS 304.39–020 sets forth the definitions for the MVRA.

"Basic reparation benefits" mean benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications, and other conditions provided in this subtitle. The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one (1) person as the result of one (1) accident shall be ten thousand dollars ($10,000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic reparation benefits consist of one (1) or more of the elements defined as "loss."

KRS 304.39–020(2).

"Loss" means accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss. Noneconomic detriment is not loss. However, economic loss is loss although caused by pain and suffering or physical impairment.

(a) "Medical expense" means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, licensed ambulance services, and other remedial treatment and care.

KRS 304.39–020(5).

In the case at hand, the PIP benefits, or basic reparation benefits, are *reimbursement* for losses suffered due to an automobile accident. Losses are defined by statute as "accrued economic loss". Medlin has not accrued any economic loss in this instance because he has not personally paid his medical bills; therefore, he cannot be reimbursed for losses he has not yet sustained. Progressive has offered either to reimburse Medlin for medical expenses he has paid or to pay the medical providers directly. Both of these are designated in the MVRA statutes, but Medlin has declined both options. The MVRA does not require Progressive to do what Medlin requests; therefore, we affirm on this issue.

■ Medlin also argues that Progressive is obligated to pay his PIP benefits to him directly because the company agreed to do so. Medlin is referring to the section of PIP benefits application where he checked the box "PLEASE PAY ME DIRECTLY". Medlin is correct that Progressive agreed to pay him directly, but it only agreed to do so if the draft also included the name of the medical provider. The MVRA does not expressly offer this option in obtaining PIP benefits, nor does it exclude it. If Progressive wants to offer a third option, such as this, to its insured customers, it can do so by agreement. Medlin wants the draft to be made out to him alone. Medlin is seeking to unilaterally change the agreement, something he cannot do.

In examining the facts of this case, Medlin was offered three ways in which to collect his PIP benefits. He could have Progressive pay his chiropractor directly, reimburse him for money he spent on medical expenses out of pocket, or issue him a check in an amount equal to his medical bills and have the check include his name and the name of his medical provider. The first two options are included in the MVRA and the third was by agreement between the parties. Medlin declined all three options.

For the foregoing reasons we affirm the judgment of the circuit court.

ALL CONCUR.